COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:     November 14, 2018
Draft Report:     May 18, 2018
Date Submitted:   May 11, 2018

Daniel T. Conway, Esquire          Alexander Tsipouras
Orlans, P.C.                       595 Gravesend Road
512 East Market Street             Smyrna, DE 19977
Georgetown, DE 19947

RE:     *Nationstar v. Tsipouras*
        Civil Action No. 10475-MG

Dear Counsel and Mr. Tsipouras:

Pending before me is a foreclosure action on an equitable home equity conversion, or reverse, mortgage. Plaintiff's motion for default judgment is denied. Following an evidentiary hearing, I recommend the Court grant judgment in favor of the plaintiff in this *in rem* foreclosure action. This is a final report.

## I.     Background

On May 14, 2009, Defendant Alexander Tsipouras ("Tsipouras" or "Borrower"), mortgagor, executed loan documents, including the equitable home equity conversion, or reverse, mortgage (the "Mortgage"), which was not under seal, the note on the reverse mortgage loan (the "Note"), and the loan agreement, with MetLife Home Loans ("MetLife"), mortgagee, on his property at 595

Gravesend Road, Smyrna, Delaware (the "Property"). Because the Mortgage was a reverse mortgage, a second mortgage was executed between Tsipouras and the Secretary of Housing and Urban Development ("HUD").[1] The Mortgage and the HUD mortgage were recorded on November 2, 2009, re-recorded on September 20, 2010 to correct the legal description of the property, and recorded for a third time on August 3, 2011.[2]

Plaintiff Nationstar Mortgage LLC dba Champion Mortgage Company[3] filed a complaint against Tsipouras in this Court on December 19, 2014 seeking foreclosure on the Mortgage. After receiving an extension, Tsipouras filed an answer on June 26, 2015. Master Ayvazian ordered this litigation stayed on July 29, 2015, pending resolution of a related Superior Court action in which the Plaintiff sought to strike an errant satisfaction of the Mortgage in order to clear the title of the property. Superior Court resolved that matter on December 1, 2015,

---

[1] *See Nationstar Mortgage LLC v. Tsipouras*, 2015 WL 9056918, at *1 (Del. Super. Dec. 1, 2015).

[2] *Id.*

[3] Current Plaintiff Nationstar HECM Acquisition Trust 2015-1, Wilmington Savings Funds Society, FSB not Individually, but solely as Trustee, was substituted as plaintiff in this case by court order on June 1, 2016 and is a successor-in-interest to MetLife.

concluding that the Mortgage was satisfied in error, and ordered that the satisfaction be stricken and the Mortgage reinstated.[4]

Plaintiff Nationstar HECM Acquisition Trust 2015-1, Wilmington Savings Funds Society, FSB not Individually, but solely as Trustee ("Nationstar") filed a motion for default judgment in this case on October 12, 2016. The hearing on the motion was scheduled for December 16, 2016, and rescheduled to April 5, 2017, at Tsipouras' request for medical reasons. At the April 5, 2017 hearing, both parties appeared and Master Ayvazian requested supplemental briefing related to the chain of title on the property. After Master Ayvazian retired that summer, this case was reassigned to me. A status hearing on this case was scheduled and both parties appeared at the November 9, 2017 hearing. The chain of title issue was addressed at that hearing.[5] But questions remained concerning the terms of the loan agreement and an evidentiary hearing on the matter was held on March 16, 2018. Following that hearing, I reopened the record to allow the parties to submit additional information, and issued a draft report on May 18, 2018. Tsipouras filed exceptions on May 29, 2018, which were briefed. After consideration, I find the

---

[4] *Nationstar Mortgage LLC,* 2015 WL 9056918, at *2 (the errant satisfaction was dated April 12, 2011 and recorded on April 19, 2011).

[5] The deed transferring the Property between Alexander and Elizabeth Tsipouras and Alexander Tsipouras was executed on May 14, 2009 and recorded on November 2, 2009. Docket Item ("D.I.") 28, Ex. B. Tsipouras indicated that his wife, Elizabeth Tsipouras, left him in January 2017. She has not appeared or participated in these proceedings.

exceptions either largely repeat arguments made previously which are adequately addressed in the report, or address matters outside of the scope of this action.[6] I adopt the draft report, with minor changes.

## II. Analysis

Plaintiff's motion for default judgment is denied. The standard for entry of a default judgment is contained in Court of Chancery Rule 55(b), which provides "[w]hen a party against whom a judgment for affirmative relief is sought, has failed to appear, plead or otherwise defend as provided by these Rules, and that fact is made to appear, judgment by default may be entered. . ." Further, Rule 55(b) is permissive, not mandatory, giving the court the discretion to decide whether to impose the "extreme remedy" of entering a default judgment.[7] The grounds for entering a default judgment are not present in this case. Tsipouras has appeared at the court hearings in this case and otherwise responded, presenting his defense from his perspective. Although his submissions have been informal, I

---

[6] In his exceptions, Tsipouras reiterated his earlier concerns and added complaints about business transactions affecting him and his property that occurred outside of the scope of this action. The evidence does not show that Nationstar, MetLife, or the Mortgage, had a direct role in those transactions, except that Tsipouras indicated he needed the funds from the Mortgage because of those dealings. *See* D.I. 42, 45.

[7] *Greystone Digital Tech., Inc. v. Alvarez*, 2007 WL 2088859, at *2 (Del. Ch. July 20, 2007).

have discretion to allow a degree of leniency, since Tsipouras is *pro se.*[8]  I conclude the entry of a default judgment would not be appropriate in this case.

The remaining issue is whether Nationstar is entitled to a judgment against Tsipouras in this foreclosure action.  As plaintiff, Nationstar bears the burden of proof in this case and, to prevail on its claim seeking foreclosure against Tsipouras, must show by a preponderance of the evidence that it is entitled to relief.[9]  I find Nationstar has met its burden in establishing that the Mortgage is valid and enforceable and that Tsipouras has defaulted on the Note through his nonpayment of taxes and insurance on the Property since 2009.  Nationstar is entitled to judgment in its favor on this foreclosure action.

The mortgage at issue is a home equity conversion, or reverse, mortgage. Reverse mortgages are designed to allow older homeowners to borrow money against the accumulated equity in their homes.  Unlike traditional mortgages, borrowers in a reverse mortgage receive periodic payments or a lump sum pay out, and do not need to "repay the outstanding loan balance until certain triggering

---

[8] Courts have the discretion to "exhibit some degree of leniency toward a *pro se* litigant, in order to see that his case is fully and fairly heard." *Cf. Durham v. Grapetree, LLC*, 2014 WL 1980335, at *5 (Del. Ch. May 16, 2014).

[9] *See Adams v. Calvarese Farms Maint. Corp., Inc.*, 2010 WL 3944961, at *7 (Del. Ch. Sept. 17, 2010); *Estate of Osborn ex rel. Osborn v. Kemp*, 2009 WL 2586783, at *4 (Del. Ch. Aug. 20, 2009), *aff'd sub nom. Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153 (Del. 2010).

events occur."[10]  The triggering event in a reverse mortgage generally involves the death of the borrower or the sale of the home, but the note and mortgage can create a triggering event, as they did in this case, when the borrower fails to perform a contractual obligation under the note and mortgage.  Under the terms of the loan documents, Tsipouras, the Borrower, is obligated to pay all property charges, including taxes and the cost of insurance on the improvements on the Property.[11] The Mortgage and Note provide that the Borrower's nonperformance of an obligation under the Mortgage (such as the failure to pay the property charges) allows the Lender, after giving notice to Tsipouras and offering him an opportunity to cure the default and with the approval of an authorized HUD representative to

---

[10] *See OneWest Bank, FSB v. Smith*, 22 N.Y.S.3d 674, 675 (N.Y. Sup. Ct. 2016).

[11] Pl.'s Tr. Ex. 4 (Fixed Rate Mortgage between A. Tsipouras and MetLife Home Loans, executed on May 14, 2009 [hereinafter "Mortgage"]) ¶¶ 2, 3.  The loan agreement states that the borrower can elect for the lender to pay property charges at the time of settlement using funds from future loan advances. Home Equity Conversion Loan Agreement (Closed End) between A. Tsipouras and MetLife Home Loans [hereinafter "Loan Agreement"]), executed on May 14, 2009, ¶ 2.10.1.  There is no evidence that Tsipouras made such an election.  In cases where the borrower has not made that election, the lender is tasked with paying property charges as a loan advance. *Id.*, ¶ 2.10.5.  However, loan advances are limited by the payment plan included with the loan agreement. Tsipouras' payment plan was fixed, with a lump sum payment at settlement and zero funds held in a line of credit.  *Id.*, Ex. 1 (Payment Plan).  Based upon the terms of this payment plan, there were no remaining loan advance funds for the lender to use to pay property charges. The lender can pay those charges to protect the property with other funds (funds that are not from monies due the borrower) if the borrower fails to do so.

accelerate the debt, to require immediate payment of all outstanding principal and accrued interest on the loan.[12]

Nationstar argues that the Mortgage is valid and enforceable between the parties, absent a seal, and seeks to foreclose on the Property because of Tsipouras' nonpayment of the taxes and insurance on the property since 2009, in violation of the Mortgage and Note. Tsipouras argues that Nationstar wrongfully paid almost all of the loan proceeds to Shallcross Mortgage Company to pay off a pre-existing mortgage loan, when he thought the monies would be paid directly to him. He has asked repeatedly "where is my money?" throughout this process. And, in an April 4, 2017, letter to the Court, he asserted that he expected to receive approximately $265,000 in cash from the reverse mortgage.[13] Tsipouras argues that he received only a small amount of cash from loan proceeds several months after the reverse mortgage loan was executed, he has not paid property taxes because he was being

---

[12] Pl.'s Tr. Ex. 3 (Fixed Rate Note between A. Tsipouras and MetLife Home Loans, executed on May 14, 2009 [hereinafter "Note"]) ¶ 6(B)(iii); Mortgage ¶¶ 9(b)(iii), 9(d).

[13] He indicated that this amount represented approximately 80% of the $350,000 appraised value minus $10,000 - $15,000 in associated fees. D.I. 26. Tsipouras provided the $350,000 appraised value for the property on his application for the reverse mortgage loan. Pl.'s Tr. Ex. 1. The Property was subsequently appraised at $540,000 as of December 27, 2012.

overcharged for his taxes, and he "does not want insurance on his property."[14] Further, he stated that he "does not know the limitations and requirements of his mortgage" and was "inadequately informed of the different types of mortgages available and was taken advantage of," and questions the validity of Nationstar's fees based upon actions regarding fees occurring with Nationstar in other states.[15]

Tsipouras' Mortgage and Note provide for a maximum principal amount of $525,000 for the loan, which represents approximately one and one-half times the amount of the maximum claim amount, consistent with HUD requirements.[16] When read together, the payment plan in the Loan Agreement and the HUD settlement statement, which were both signed by Tsipouras on May 14, 2009, show a principal limit on the loan of $229,950.00, including payments of $16,218.64 in closing costs, $205,274.36 towards the discharge of outstanding liens ($203,742.36 to Shallcross Mortgage to pay off a pre-existing mortgage on the property and

---

[14] D.I. 26. Tsipouras indicated he had received approximately $3,200 at the time of settlement and another $750 from loan funds shortly after he entered into the Mortgage. *Id.;* Loan Agreement, Ex. 1. A $750 pay out under the loan is reflected in the Champion Mortgage Transaction History, dated March 8, 2010. Pl.'s Tr. Ex. 6.

[15] D.I. 26.

[16] Mortgage; Note ¶ 2; *see also Wells Fargo Bank, N.A. v. Richardson*, 2013 WL 4257967, at *6 (Del. Ch. Aug. 13, 2013) (reflecting testimony that a lender in a reverse mortgage typically "applies a formula somewhere between one and one half to twice the amount of the funds borrowed so that the lender is protected in the event the applicant lives beyond his life expectancy").

$1,532.00 in insurance costs), $5,205.97 in servicing fee set aside, and a $3,251.03

loan advance, which was paid in cash to Tsipouras at settlement.[17]

In this case, Nationstar presented evidence that the Mortgage is valid and

enforceable as an equitable mortgage. It demonstrated that the triggering event,

which precipitated its acceleration of the Mortgage debt under the terms of the

Mortgage and Note, occurred beginning in March 2010, when it started paying the

delinquent taxes on the Property. Nationstar has continued to pay insurance and

taxes on the Property since that time.[18] Those payments have not come from any

funds that are due to Tsipouras. Tsipouras has not paid taxes or insurance on the

Property since 2009, in violation of his obligations under the Mortgage and Note.

The Lender sent a demand letter to Tsipouras on April 19, 2013, providing notice

---

[17] Loan Agreement, Ex. 1; Pl.'s Tr. Ex. 2 (HUD Settlement Statement). The addendum to Tsipouras' Residential Loan Application for Reverse Mortgages, which was signed by Tsipouras on November 14, 2008, also depicts a loan amount of $229,950.00. Pl.'s Tr. Ex. 1. The HUD settlement statement shows that $224,744.03 was paid out at settlement, including $3,251.03 to Tsipouras. Pl.'s Tr. Ex. 2. The servicing fee set aside was not paid out at settlement but maintained by the Lender related to future fees or payments related to the loan. The mortgage satisfaction piece for the Shallcross mortgage was recorded on June 1, 2009. Pl.'s Tr. Ex. 9.

[18] Pl.'s Tr. Ex. 6. According to the Champion Mortgage Transaction History, the Lender paid delinquent taxes for the Property on May 17, 2010, May 11, 2011, November 23, 2011, January 16, 2013, September 20, 2013, September 15, 2014, September 17, 2015, September 14, 2016, and September 13, 2017; it paid insurance for the Property on October 4, 2010, May 25, 2011, May 22, 2012, May 21, 2013, May 21, 2014, May 27, 2015, May 23, 2016, May 24, 2017, and September 21, 2017. *Id.*

of the default and giving him 30 days to cure.[19]  Nationstar also notified HUD's authorized representative concerning Tsipouras' nonperformance on the Mortgage obligations, and the representative approved the acceleration of the Mortgage loan debt on December 12, 2012.[20]  Accordingly, Nationstar has met its burden to show that it complied with its contractual and legal obligations related to the Mortgage, and it is entitled to accelerate the debt and foreclose on the Mortgage.[21]

Because of the vehemence of his objection to this action, I do not doubt that Tsipouras believes that he should have received all of the money from the reverse mortgage and that he did not receive what he wanted.  And, I recognize that the loan documents for a reverse mortgage are complicated.  However, Tsipouras signed the required loan documents and those documents show what his obligations under the loan were, what the total principal amount on the loan was, that the full amount was being paid out in a lump sum at the time the Mortgage

---

[19] Pl.'s Tr. Ex. 5 (Ltr. from Champion Mortgage to A. Tsipouras dated Apr. 19, 2013).

[20] D.I. 36, Ex. A (Ltr. from Celink, loan sub-servicer for Champion Mortgage, to Deval, LLC, HUD's loan servicer, dated Dec. 11, 2012), Ex. B (Ltr. from Deval to Celink dated Dec. 12, 2012).

[21] I note that the record contains a letter from MetLife Home Loans to Tsipouras dated April 18, 2011, in which MetLife advises Tsipouras that the Mortgage attaches to all 66.8 acres of the Property; however, HUD only allows them to value five acres of the Property, so that the remaining 61.8 acres is considered "excess acres."  Def.'s Tr. Ex. 1 (Ltr. from T. Baldwin, MetLife Assistant Vice President, to A. Tsipouras, dated April 18, 2011).  The letter provides notice that Tsipouras can seek release of the excess acreage from the Mortgage, with the approval of HUD and the Lender.  The record does not show if Tsipouras has sought the partial release of the land from the Mortgage.

was entered into, and that the large majority of the Mortgage funds was being paid to extinguish a pre-existing mortgage on the Property. Although Tsipouras may not like the bargain he entered into, he received the benefit of having his outstanding mortgage paid off and receiving approximately $3,200 in cash. He failed to provide any proof, besides his conclusory allegations in court asking "where is my money" from the loan, that this was not the agreement that he entered into. Even if I were to presume that his defense is that there was a unilateral mistake concerning the loan agreement, he failed to plead the circumstances of the mistake with particularity, as required by Court of Chancery Rule 9 (b), or to meet the criteria necessary to reform his loan agreement because of unilateral mistake.[22]

---

[22] To assert the doctrine of unilateral mistake in order to reform a written agreement, a party must show that it was mistaken and the other party knew of the mistake but remained silent. *Cf. Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002). In other words, the party asserting the doctrine must show, by clear and convincing evidence, that the parties came to a specific prior understanding that differed materially from the written agreement. *Id.* at 1151-52; *see also Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 679-80 (Del. 2013). If the mistaken party is at fault for failing to "know or discover the facts before making the contract," he may still seek reformation of a written agreement that "incorrectly transcribes the parties' agreement" unless his fault "amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." *Scion Breckenridge Managing Member,* LLC, 68 A.3d at 676-77 (adopting the standard in *Restatement (Second) of Contracts* §157 for a reformation claim). Here, the loan documents showed the principal amount of the mortgage loan, that the lion's share of the monies paid out on the loan would be paid to "Shallcross Mortgage," which held the pre-existing lien on the Property, that Tsipouras was obligated to pay the taxes and insurance

## III. Conclusion

For the foregoing reasons, I recommend that the Court deny Nationstar's motion for default judgment, and grant judgment in favor of Nationstar in this *in rem* foreclosure action. This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144. Within 15 days after this report becomes final, Nationstar shall submit an order implementing this report.

Sincerely,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

PWG/kekz

---

on the Property, and that the loan debt could be accelerated and the full amount of the Mortgage and accrued interest become due, if that obligation was not performed. Tsipouras executed the documents and accepted the benefits from the loan agreement, which eliminated his outstanding obligations under the pre-existing mortgage and he received a small amount of cash. There was no evidence that the Lender's and Tsipouras' initial understanding as to the terms of the loan agreement differed materially from those in the written loan documents. Tsipouras may have misunderstood how much cash he was going to receive under the loan agreement, but he failed to show that the Lender knew of his misunderstanding and remained silent.